IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA



FILED IN OFFICE
SEP 1 7 2014
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

| | |
|---|---|
| GEORGE JACKSON, individually, and MONTREASE COLEMAN, individually,<br>Plaintiffs,<br><br>VS.<br><br>ROOHI ABUBAKER, M.D., AND MOREHOUSE HEALTHCARE, INC<br><br>Defendants. | CIVIL ACTION FILE<br>NO: 2014W261602 |

[ COPY ]

## PLAINTIFFS' COMPLAINT FOR MEDICAL MALPRACTICE

COME NOW, GEORGE JACKSON, Individually, and MONTREASE COLEMAN, Individually, Plaintiffs in the above-styled matter, by and through their attorney of record and file this, their Complaint for Medical Malpractice against ROOHI ABUBAKER, M.D. and MOREHOUSE HEALTHCARE, INC. and show the Court as follows:

### PARTIES AND JURISDICTION

1.

Plaintiffs George Jackson and Montrease Coleman are the natural parents of Akeem Jackson.

2.

Defendant ROOHI ABUBAKER, M.D., [hereinafter referred to as Defendant Dr. Abubaker], is licensed to practice medicine in the State of Georgia and may be served with

1



DEFENDANT'S EXHIBIT B

process at her residence located at 3597 Rembrandt Rd, Fulton County, Atlanta, GA 30327, her place of business located at Fort McPherson Clinic, 1701 Hardee Ave, SW, Fulton County, Atlanta, GA 30310, or any other place she may be found. Once served, she will be subject to the jurisdiction and venue of this Court.

3.

Defendant MOREHOUSE HEALTHCARE, INC, *[hereinafter referred to as Defendant Morehouse]*, is a Georgia non-profit corporation and may be served by and through its registered agent, Santhia L. Curtis, 720 Westview Drive, SW, Fulton County, Atlanta, Georgia 30310-1458. Defendant Morehouse is subject to the jurisdiction of this Court and venue is proper.

4.

At all times material and relevant herein, there was a physician-patient relationship between Defendant Dr. Abubaker and Akeem Jackson. Defendant Dr. Abubaker owed Akeem Jackson a duty of care.

5.

At all times material and relevant herein, Defendant Dr. Abubaker was a physician duly licensed and authorized to practice medicine in the State of Georgia, specifically psychiatry, and was engaged in the practice of her profession in Georgia.

6.

At all times material and relevant herein, Defendant Dr. Abubaker was an agent (actual and/or ostensible), employee, partner, servant, and/or member of Defendant Morehouse and was acting in the scope of said agency with said Defendant.

7.

Defendant Morehouse is vicariously liable for the negligence of Defendant Dr. Abubaker.

8.

Defendant Morehouse held itself out to the public as providing medical personnel competent to properly examine, treat, diagnose, and care for members of the public, including proper medical practices and procedures that are generally accepted within the medical profession.

9.

As alleged or described herein, Defendant Morehouse and Defendant Dr. Abubaker [*collectively, "Defendants"*] medical services, treatment, and care failed to comply with that degree of care and skill exercised by members of the medical profession generally under the same or similar circumstances and proximately caused Akeem Jackson's death.

10.

At all times material and relevant herein, Defendants owed Akeem Jackson a duty of care.

## FACTUAL ALLEGATIONS

11.

Plaintiffs specifically reassert and incorporate by reference, each and every allegation contained in paragraphs 1- 10, above as if fully set forth herein.

12.

Akeem Jackson was a 24 year old Marine veteran who was diagnosed with schizophrenia in September of 2011 when he sought help in the Emergency Room at the Veteran's Administration. He was started on Abilify.

13.

Akeem suffered from constant auditory hallucinations. Akeem also suffered from visual hallucinations.

14.

Akeem was hospitalized at the Veteran's Administration hospital in Decatur, Georgia for treatment of his schizophrenia for approximately 10 days on or about October 28, 2011. Treatment included obtaining a therapeutic level of Olanzapine.

15.

After his discharge, Akeem Jackson was treated on an outpatient basis at the main campus of the Veteran's Administration Hospital in Decatur, Georgia.

16.

Akeem attended his appointments with his psychiatrist after his discharge on or about November 8, 2011.

17.

As is common with patients who suffer from schizophrenia, Akeem Jackson was at times non-compliant with his medication.

18.

Akeem was assigned to the Bravo Team in the Mental Health department. The healthcare providers and social worker on his psychiatric team maintained phone contact with Akeem until February 2012.

19.

On August 7, 2012, after being away from treatment for months, Akeem came in as a walk-in to obtain treatment at the main campus of the Veteran's Administration Hospital in Decatur, Georgia.

20.

On August 7, 2012, Akeem was seen in the clinic by an internal medicine doctor. Akeem admitted to the clinic doctor that he had run out of his Olanzapine two to three weeks before coming into the clinic. The physician in the clinic asked Akeem's psychiatrist if he would have a session with Akeem that day.

5

21.

On August 7th, after Akeem was seen by the clinic doctor, he had a session with his psychiatrist.

22.

During his session with his psychiatrist, Akeem admitted that he had been non-complaint with his Olanzapine but agreed to resume the medication and continue therapeutic sessions. Akeem requested a transfer to East Point Mental Health because it was easier to get to from a transportation perspective.

23.

Despite Akeem's transfer request, his psychiatrist instructed the staff to schedule Akeem to come back in 2 weeks even if it meant overbooking his schedule. He also assigned Akeem to a clinical psychologist and on the same day Akeem was called and a voice message was left instructing him to make a 60 minute appointment with the psychologist.

24.

Eight days later on August 15, 2012, Akeem came to his first psychiatric session with Defendant Dr. Abubaker at the East Point campus.

25.

During the session, Akeem told Defendant Dr. Abubaker that when he sleeps it feels like someone is controlling him and thrusting his penis in his mouth.

26.

Akeem told Defendant Dr. Abubaker that the voices tell him they are going to rape his baby sisters (who lived in the same house with him). He also said that sometimes the voices tell him to throw up.

27.

During the session, Akeem stated that he felt like throwing up because the voices were telling him to throw up. During the session, Akeem left the room to go to the bathroom to throw up because the voices told him to do so. When he returned to the session he appeared more anxious and ended the session.

28.

Dr. Abubakeer also charted, in relevant part, the following:

- Sitting at the edge of the chair bent over his knees;
- Mood anxious;
- Pattern or[sic] of delusions elicited;
- Idea[l]s [sic] of reference;
- Admits to auditory and visual hallucinations;
- Insight and judgment impaired.

29.

Dr. Abubaker concluded that the Olanzapine was not working. She prescribed a new medication for Akeem, Risperidone 2mg: ½ tablet QD for 4 days, then 1 tablet QD for 4 days, and then 2 tablets QD. She told Akeem to follow up in 1 month.

30.

5 days later on August 20th, there is a note instructing VA personnel to schedule a follow up "with therapist." There is no record that either an appointment with Dr. Abubaker or the therapist was ever scheduled or that there was any attempt made to schedule said appointments.

31.

On or about September 21, 2012, Akeem was found in the woods with a self-inflicted gunshot wound to the head.

32.

As a result of Defendants' negligent acts and omissions, Akeem Jackson committed suicide.

## MEDICAL NEGLIGENCE

33.

Plaintiffs specifically reassert and incorporate by reference, each and every allegation contained in paragraphs 1 - 32, above as if fully set forth herein.

34.

At all times material and relevant herein, Defendant Dr. Abubaker and Defendant Morehouse, by and through Defendant Dr. Abubaker, provided medical care and treatment to Akeem Jackson. Defendants owed a duty to Akeem Jackson to provide him with that degree and skill ordinarily employed by a physician generally under the same or similar circumstances as those presented by Akeem Jackson.

35.

The generally accepted standard of care and skill ordinarily exercised by members of the medical profession, under same or similar circumstances as present in Defendant Dr. Abubaker's treatment of Akeem required Dr. Abubaker to do at the least the following:

a) Review Akeem's history in his medical records, and at a bare minimum, read the last psychiatric session note which was a mere 8 days earlier;
b) Not switch Akeem's medication to Risperidone based on his statements that the Olanzapine did not work;
c) Encourage Akeem to take his Olanzapine daily as previously ordered;
d) Reassess Akeem for the High Risk Suicide Protocol;
e) Recognize Akeem exhibited severe psychosis at his August 15th session;
f) Offer Akeem hospitalization;
g) See Akeem back in a few days, not a month;
h) Call Akeem and check on his behavior;
i) Keep Akeem in contact with healthcare providers through phone calls;
j) Keep Akeem engaged through phone calls from healthcare providers.

36.

Defendant Dr. Abubaker deviated from the standard of care in at least the following:

(a) Failed to review Akeem's history in his medical records, and at a bare minimum, read the last psychiatric session note which was a mere 8 days earlier;
(b) Switched Akeem's medication to Risperidone based on his statements that the Olanzapine did not work;
(c) Failed to encourage Akeem to take his Olanzapine daily as previously ordered;
(d) Failed to reassess Akeem for the High Risk Suicide Protocol;
(e) Failed to recognize Akeem was psychotic at his August 15th session;
(f) Failed to offer Akeem hospitalization;
(g) Failed to see Akeem back in a few days, not a month;

(h) Failed to call Akeem and check on his behavior;

(i) Failed to keep Akeem in contact with healthcare providers through phone calls; and

(j) Failed to keep Akeem engaged through phone calls from healthcare providers.

37.

Defendant Dr. Dr. Abubuaker deviated from the standard of care and failed to exercise the degree of skill and care ordinarily required by the profession in general and in physicians in particular under like conditions and circumstances.

38.

Defendant Dr. Abubaker's failure to exercise the standard of care proximately caused the death of Akeem Jackson.

39.

Defendant Morehouse is vicariously liable for the negligence of Defendant Dr. Abubaker and the injuries that were proximately caused by her negligent acts and omissions.

40.

Pursuant to O.C.G.A. §9-11-9.1, Plaintiffs have attached as Exhibit "A", and incorporate by reference the Affidavit of Matthew Norman, MD, who is Board Certified in Psychiatry and is competent to testify in this matter, setting forth at least one particular act of negligence by Defendants, thus fulfilling the requirements of O.C.G.A. §9-11-9.1.

## NEGLIGENT TRAINING, RETENTION AND SUPERVISION

41.

Plaintiffs specifically reassert and incorporate by reference, each and every allegation contained in paragraphs 1- 40, above as if fully set forth herein.

42.

At all times material and relevant herein, Defendant Morehouse had a duty to properly train and supervise its physicians who provided care to patients seen at the East Point Clinic.

43.

At all times material and relevant herein, Defendant Morehouse had a duty to properly train and supervise Defendant Dr. Abubaker to properly execute her job duties.

44.

Defendant Morehouse's employee, agent, and/or servant, Defendant Dr. Abubaker, treated Akeem Jackson as stated in the herein Complaint and Affidavit.

45.

Defendant Morehouse failed to properly train and supervise Defendant Dr. Abubaker to ensure that she rendered the appropriate care and treatment to Akeem Jackson.

46.

Defendant Morehouse failed to ensure Defendant Dr. Abubaker, was adequately trained and supervised in the proper care and treatment of a patient in like or similar circumstances as Akeem Jackson.

47.

Defendant Morehouse negligently retained Defendant Dr. Abubaker, and permitted her to care for patients such as Akeem Jackson when Defendant Morehouse knew or should have known she was not properly trained or supervised so that she could provide Akeem Jackson with the appropriate care and treatment.

48.

As a result of Defendant Morehouse's negligent training, retention, and supervision of Defendant Dr. Abubaker, Akeem Jackson was improperly treated by Defendants thereby causing his death.

## DAMAGES

49.

Plaintiffs specifically reassert and incorporate by reference, each and every allegation contained in paragraphs 1 - 48, above as if fully set forth herein.

50.

Akeem Jackson's death was proximately caused by the negligent acts and omissions of Defendant Dr. Abubaker and Defendant Morehouse.

WHEREFORE, Plaintiffs respectfully pray:

(a) That their Complaint be filed, Summons issued, and service be perfected as in accordance the law;

(b) For entry of judgment in their favor and against Defendants in an amount in excess of Ten Thousand Dollars for the following claims: full value of life, loss of income, pain and suffering prior to death, and any other damages recoverable at law;

(c) That all claims be tried by a jury; and

(d) That Plaintiffs will be granted such other and further relief as the Court deems just and proper.

Respectfully submitted, this 17th day of September, 2014.

**Law Office of Chrisna D. Jones, LLC**

By: _____
Chrisna D. Jones
Georgia Bar No: 731598

1031 Juniper Street, NE
Atlanta, GA 30309
404-419-9494
cjones@chrisnajones.com